**KROLL v. McGRATH.**

**McGRATH v. KROLL.**

Nos. 11149, 11150.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 9, 1952.

Decided July 17, 1952.

Malcolm N. Rich, New York City, with whom Clarence G. Campbell, New York City, was on the brief, for William J. Kroll, New York City, appellant in No. 11,149 and appellee in No. 11,150. James W. Dent, New York City, also entered an appearance for William J. Kroll.

Samuel Z. Gordon, Atty., Washington, D. C., Department of Justice, of the Bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Asst. Atty. Gen. Harold Baynton and George B. Searls, Atty., Washington, D. C., Department of Justice, were on the brief, for J. Howard McGrath, Washington, D. C., appellee in No. 11,149 and appellant in No. 11,150.

Before CLARK, WILBUR K. MILLER and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

Both parties have appealed from an order of the United States District Court for the District of Columbia. We shall refer to them as "Kroll" and "the government" for purposes of ease and clarity in reading.

In its order, the court directed the return of a patent to Kroll, subject to an exclusive license in the government, with right of sub-licensing at royalties agreed upon by Kroll and the government, or set by the court in the event the two were unable to agree as to the rate thereof. In addition, the court found that certain compensation received by Kroll from a third party for release of past infringements of the patent was in lieu of royalties, and ordered Kroll to pay one-half thereof to the government.

The action was brought by Kroll, a non-enemy alien, resident of the United States, to obtain return of a certain United States

patent which had been seized by the Alien Property Custodian as the property of a non-enemy alien citizen of an enemy-occupied country. There existed between Kroll and a German corporation (which we shall call the corporation) a contract by the terms of which the corporation enjoyed certain rights in any inventions perfected by Kroll, such rights to endure for the life of each patent affected. In addition to the patent itself, the Alien Property Custodian seized all the rights of the German corporation under that contract.

In his appeal, Kroll seeks return of the patent free of any rights in the government, and he seeks relief from the order requiring that he pay to the government one-half the amount he has received in settlement of infringements. Essentially, Kroll contends that the contract with the corporation was void under German law, but in any event that any rights of the corporation in the patent were at best inchoate since he and the corporation had not completed certain arrangements which Kroll asserts were conditions precedent to creation of a completed license.

The government has also appealed from the judgment of the District Court, contending that Section 20 of the Trading With the Enemy Act[1] bars any award of judgment to Kroll since he failed to furnish the court with a schedule of agents' and attorneys' fees and to secure court approval thereof. The government also contends that the court erred in that part of its order which provides that the amount of royalties to be charged for sub-licensing must be determined by agreement between Kroll and the government, or by the court.

The District Court made most careful and exhaustive findings of fact which we find abundantly supported by the record. In his conclusions of law the court ruled, *inter alia,* that the contract between Kroll and the corporation was valid and effective insofar as the patent in question was concerned; that the Alien Property Custodian had succeeded to the rights of the corporation; and that under the contract the government holds an exclusive license in and to the patent with a right to sub-license others and to share equally with Kroll in any and all royalties, and a right— but not an obligation—to sue infringers and bring other actions to protect the said patent. The court also concluded that compensation received by Kroll from a third party was in lieu of royalties and ordered one-half thereof paid to the government. We find no error in the court's conclusions.

Turning now to the contentions of the government on appeal, we cannot accept the view that the language of Section 20 of the Trading With the Enemy Act must be read to preclude entry of judgment until a schedule of fees has been submitted to the court and approved. The statute is manifestly designed to protect the owner seeking restoration of seized property from unreasonable or even extortionate fees for services. It requires that there be a finding that "the individual fees do not exceed fair compensation *for the services rendered*" [emphasis supplied], and specifies that the aggregate of fees shall be limited to ten percentum of the value of the property or interest returned. But it also provides that fees in excess of ten percentum of the value may be awarded "upon a finding that there exist special circumstances of unusual hardship which require the payment of such excess".

In such a state of the law, where the interests of the owner and the value of the services of counsel or agents are placed within the protection of the court, or others designated, decision can best be made when the fullest information is available. Certainly the full extent and value of professional or other services cannot be known at the time the court is called upon to decide the legal questions at trial, for often many duties remain to be performed after decision. No better illustration of that fact is needed than the instant litigation wherein, following trial and judgment, considerable effort has been devoted to the prosecution and defense of these appeals. The better view, as we see it, is that *execution* of a judgment requiring return of property may

---

1. 60 Stat. 54, c. 83, § 2, 50 U.S.C.A. Appendix, § 20.

properly be withheld until a schedule of fees has been submitted and approved, as required by the statute, and we so hold.

█ As for the government's other contention on appeal, the record of the court's inquiry, and the replies of counsel, clearly demonstrate the reasonableness and necessity of the court's decision to attach a provision to its order that any royalties on sublicenses must be arrived at by agreement between Kroll and the government. Certainly, where the value of the patent is dependent upon the single factor of royalties and, as here, there is no clear contractual provision for methods of fixing them, both the owner and the licensee should participate in their determination. The further provision for court decision when the parties are unable to agree is an effective and reasonable device to assure that the commercial value of the patent will not be stifled by failure of the parties to reach agreement, or by the obstinacy of one.

Having found that the court's findings of fact are amply supported by the record, and that his conclusions of law are free from error, it is the decision of this court that the judgment of the District Court be

Affirmed.